UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LODSYS, LLC, | CIVIL ACTION NO. 2:11-cv-272-TJW |
| Plaintiff, | **<u>HEARING REQUESTED</u>** |
| v. | |
| COMBAY, INC.;<br>ICONFACTORY, INC.;<br>ILLUSION LABS AB;<br>MICHAEL G. KARR D/B/A SHOVELMATE;<br>QUICKOFFICE, INC.;<br>RICHARD SHINDERMAN;<br>WULVEN GAME STUDIOS, | |
| Defendants. | |

**<u>APPLE INC.'S MOTION TO INTERVENE</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

FACTS AND PROCEDURAL BACKGROUND ........................................................................ 3

     I.     The Licensed Technology ...................................................................................... 3

     II.    Lodsys's Infringement Claims .............................................................................. 4

     III.   Early Stage of the Proceedings and Apple's Proposed Answer and
           Counterclaim ...................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

     I.     Legal Standard ..................................................................................................... 7

     II.    Apple is Entitled to Intervene As a Matter of Right Under Rule 24(a)(2) ............. 8

           A.    Apple's Motion to Intervene is Timely...................................................... 9

           B.    Apple Has a Significant Interest in the Property and Transactions That
                Are at Issue in this Lawsuit .................................................................... 10

           C.    Apple's Ability to Protect its Interests Will Be Impaired if it is Not
                Permitted to Intervene Here ................................................................... 11

           D.    The Developers May Not Adequately Represent Apple's Interest in
                Demonstrating That Lodsys's Infringement Claims Are Exhausted ........ 12

     III.   In The Alternative, Permissive Intervention is Appropriate Here Under Rule
           24(b) .................................................................................................................. 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bush v. Viterna*,
  740 F.2d 350 (5th Cir. 1984) ............................................................. 13

*Chandler & Price Co. v. Brandtjen & Kluge, Inc.*,
  296 U.S. 53 (1935) .............................................................................. 11

*Codex Corp. v. Milgo Elec. Corp.*,
  553 F.2d 735 (1st Cir. 1977) ............................................................. 12

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) ..................................................... 7, 9, 10

*GE Co. v. Wilkins*,
  2011 WL 533549 (E.D. Cal. Feb. 11, 2011) ................................... 10

*Heaton v. Monogram Credit Card Bank*,
  297 F.3d 416 (5th Cir. 2002) ................................................ 9, 12, 13

*Honeywell Int'l v. Audiovox Commc'ns Corp.*,
  2005 WL 2465898 (D. Del. May 18, 2005) ........................... 11, 12, 14

*IBM Corp. v. Conner Periphs., Inc.*,
  1994 WL 706208 (N.D. Cal. Dec. 13, 1994) .................................... 11

*John Doe No. 1 v. Glickman*,
  256 F.3d 371 (5th Cir. 2001) ..................................................... 12, 13

*LG Elecs. Inc. v. Q-Lity Comp. Inc.*,
  211 F.R.D. 360 (N.D. Cal. 2002) ...................................................... 14

*Mendenhall v. M/V Toyota Maru No. 11 v. Panama Canal Co.*,
  551 F.2d 55 (5th Cir. 1977) ................................................................ 8

*Negotiated Data Solutions, LLC v. Dell, Inc.*,
  No. 2:06-cv-528 (E.D. Tex. 2008) .................................................. 8–9

*Ozee v. Am. Council on Gift Annuities, Inc.*,
  110 F.3d 1082 (5th Cir. 1997) .......................................................... 10

*Reid v. GM Corp.*,
  240 F.R.D. 257 (E.D. Tex. 2006) ............................................. 7, 14–15

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ....................................................... 7, 10

*Sierra Club v. Glickman*,
  82 F.3d 106 (5th Cir. 1996) ..................................................................... 9

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ............................................................. 7–8

*State Farm Fire and Cas. Co. v. Black & Decker, Inc.*,
  Civ. A. 02-1154, 2003 WL 22966373 (E.D. La. Dec. 11, 2003)........................... 8

*Teague v. Bakker*,
  931 F.2d 259 (4th Cir. 1991) .............................................................. 13

*Tegic Commc'ns Corp. v. Bd. Of Regents of the Univ. of Tex. Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006).......................................................... 11

*The Aransas Project v. Shaw*,
  2010 WL 2522415 (S.D. Tex. June 17, 2010) ......................................... 9

*TiVo Inc. v. AT&T Inc.*,
  No. 2-09-cv-259 (E.D. Tex. March 31, 2010) ....................................... 15

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972)......................................................................... 12

*U.S. Ethernet Innovations, LLC v. Acer, Inc. et al*,
  No. 6:09-cv-448 (E.D. Tex. May 10, 2010).................................... 11, 15

## FEDERAL RULES

Fed. R. Civ. P. 24..................................................................................... 7

## OTHER AUTHORITIES

Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1914 (2d ed. 1986)................. 8

Apple Inc. ("Apple") hereby respectfully moves to intervene as a defendant and counterclaim plaintiff in the above-captioned action brought by plaintiff Lodsys, LLC ("Lodsys") against seven software application developers (collectively, "Developers"), for allegedly infringing U.S. Patent Nos. 7,222,078 (the "'078 patent") and 7,620,565 (the "'565 patent" and, collectively, the "patents in suit"). Apple seeks to intervene because it is expressly licensed to provide to the Developers products and services that embody the patents in suit, free from claims of infringement of those patents.

## INTRODUCTION

In its Complaint, Lodsys alleges that the Developers infringe the patents in suit. Lodsys's claims are based on the Developers' use of products and services provided to the Developers by Apple, for which the Developers pay Apple a percentage of their sales. Apple has an interest in property that is at the center of this dispute, namely, its license to the patents in suit and its business with the Developers, which depends on their use of products and services that Apple is expressly licensed under the patents in suit to offer them. Both Lodsys's Complaint and its threats to other Apple developers adversely affect the value of Apple's license and its business with the Developers.

Apple should be permitted to intervene here, for at least two separate and independent reasons. First, Apple satisfies the requirements for intervention as of right under Fed R. Civ. P Rule 24(a). Apple has an interest in the property that is the subject of this action, namely, the patents in suit. Apple has a license to those very same patents. The value of this license to Apple here lies in Apple's ability, pursuant to the express terms of the license, to offer products and services embodying the patents in suit to the Developers, in return for the Developers' agreement to pay Apple a percentage of their sales made using Apple's products and services. The Developers, in turn, are able to use the products and services Apple provides to

them free from claims of infringement of the patents in suit under the doctrines of exhaustion and

first sale.  Apple has a direct and substantial interest in preserving the value of its license, as well

as in protecting the value of its technology, services, and relationships with the Developers.

Those interests will be prejudiced absent intervention here.  A determination that the Developers

are not permitted to use Apple's licensed products and services will significantly diminish the

value of Apple's license rights, impair its relationships with the Developers, and lead to loss of

significant revenue from all developers.  In fact, the mere allegation of the same significantly

threatens to diminish Apple's rights and those relationships.  Moreover, Apple's rights will not

be adequately protected by the current defendants in this case, because Lodsys has chosen to

assert these claims against Developers who are individuals or small entities with far fewer

resources than Apple and who lack the technical information, ability, and incentive to adequately

protect Apple's rights under its license agreement.

Second, even if Apple could not intervene as of right, the motion should still be

granted for the separate reason that Apple satisfies the requirements for permissive intervention

under Fed. R. Civ. P. Rule 24(b).  It is black-letter law that permissive intervention is appropriate

to protect the interests of a non-party whose technology has been accused of patent infringement.

Apple's proposed defense and counterclaim are based on the doctrines of exhaustion and first

sale deriving from Apple's license to the patents in suit.  Apple's defense and claim present

numerous issues of law and fact that will be common to the main action, regardless of whether

Apple is permitted to intervene.  Finally, intervention will not delay these proceedings or

prejudice any current party.  The Court should grant this motion and allow Apple to file the

proposed Answer and Counterclaim submitted herewith.[1]

---

[1]    Apple's proposed Answer and Counterclaim is attached as Exhibit A hereto.

## FACTS AND PROCEDURAL BACKGROUND

**I.     The Licensed Technology**

Apple designs and offers a comprehensive ecosystem of technologies and services that enable the delivery of software applications (or "Apps") such as games, tools, and educational services on Apple devices such as the Mac, iPhone, iPad, and iPod Touch.  *See, e.g.*, Answer-in-Intervention ("Answer") ¶ 1.  In order to access Apple hardware and software, the Developers use Apple application program interfaces ("APIs"), Apple software development kits ("SDKs"), and Apple's operating system ("iOS").  *Id.* ¶ 5.  Together, these Apple products and services permit the Developers to interact with Apple end users through the App Store, where Developer Apps can be purchased or upgraded.  *Id.*  Apple also provides a comprehensive set of Apple hosting, marketing, sales, agency and delivery services that allow Developers to provide Apps to millions of Apple end users.  *See generally id.*[2]  In return for Apple's provision of these products and services to the Developers, the Developers agree to pay Apple a percentage of their sales made using Apple's products and services.  *See, e.g.*, *id.* ¶ 6.  Apple's innovative products and services have enjoyed great success:  fourteen billion Apps have been downloaded from the App store, and the App Store's offerings grow daily, with 425,000 Apps available from tens of thousands of unique app developers.  *Id.*

To protect its enormous investment in its App Store and related hardware, software, and APIs, Apple periodically enters into licenses for patents that allegedly cover Apple technology, including one such license agreement (the "License") that covers the patents-in-suit. *See generally* Declaration of Jonathan C. Sanders ("Sanders Decl.") ¶ 2, Ex. A.  The License

---

[2]     The "App Store" is a virtual store from which users may buy and upgrade applications such as games and tools.  The developers, not Apple, set the prices at which their Apps are sold.  Apple acts as an agent of the Developers in effectuating the sale of the Apps to Apple end users.

provides Apple with, among other things, the right to offer products and services that embody

the Lodsys patents.  *See generally id.*  Lodsys has acknowledged that Apple is licensed to these

patents.  http://www.lodsys.com/blog.html ("**Apple is licensed** . . . .") (emphasis in original).

## II.     Lodsys's Infringement Claims

Although Lodsys's Complaint lacks any detailed allegations as to what aspects of

the accused Apps infringe the patents in suit, notice letters Lodsys sent to each of the Developers

establish clearly that Lodsys's claims target Apple technology.  Specifically, the infringement

analysis in the notice letters focuses on the Developers' use of Apple products and services

covered by the License.

For example, Lodsys appended to its notice letters representative claim charts

purporting to show how Claim 1 of the '078 patent (asserted here) reads on the accused products.

Sanders Decl. ¶ 3, Ex. B (Illusion Labs) at 4-9.  Claim 1 of the '078 patent claims, among other

things, (1) "[a] user interface, which is part of each of the units of the commodity, configured to

provide a medium for two-way local interaction between one of the users and the corresponding

units of the commodity, and further configured to elicit, from a user, information about the user's

perception of the commodity"; (2) "[a] memory within each of the units of the commodity

capable of storing results of the two-way local interaction from each of the units of the

commodity to a central location" and "[a] communication element associated with each of the

units of the commodity capable of carrying results of the two-way local interaction from each of

the units of the commodity to a central location"; and (3) "[a] component capable of managing

the interactions of the users in different locations and collecting the results of the interaction at

the central location."  Docket No. 1, Ex. B at Claim 1.  Each of these elements requires, under

Lodsys's apparent theories, the use of licensed Apple APIs, software, and/or hardware.

For example, the screenshot Lodsys used purportedly to establish the first claim element above with respect to Illusion Labs shows an interface with an "App Store" button that uses an Apple API and other Apple technology to allow interaction between the App, the user, and the App Store:



Sanders Decl. ¶ 3, Ex. B at 7.  Similarly, Lodsys relied on screenshots depicting the use of Apple's APIs and memory and the App Store purportedly to meet the second claim element, storing user feedback to the App Store itself:



*Id.* at 8.  Finally, Lodsys likewise pointed to a screenshot of the App Store itself to allegedly meet the final claim element, collecting and storing the user results in that central location:



*Id.* at 9.  Thus, in each case, even under Lodsys's own infringement theories, Lodsys's

allegations rest substantially or entirely on Apple products and services licensed under Apple's

License, not on algorithms or content provided by the Developers themselves.

Moreover, even a cursory review of the diverse Apps accused of infringing the

patents in suit reveals that their only similarity is their use of Apple products and services.  The

accused products range from business software that permits the user to work on Microsoft Office

documents (Quickoffice), to a fantasy game (Shadow Era), to a game in which the user guides a

silver ball through a labyrinth (Labyrinth), to a game requiring the user to strategically eliminate

hearts that shoot daggers (Hearts and Daggers), to a program that facilitates the composition of

"Tweets" for Twitter (Twitterrific), to a poker game (Mega Poker).  *See generally* Docket No. 1

(Complaint).  The only thing these Apps have in common is their use of the Apple technology

that permits the Developers to interact with Apple end users through the App Store and other

Apple technology.  In other words, what is at issue in this case is not the substantive code in

these varied programs, but rather each individual App's use of Apple products and services, all

of which are licensed.

## III.    Early Stage of the Proceedings and Apple's Proposed Answer and Counterclaim

On June 1, 2011, this case was assigned to Judge T. John Ward.  Sanders Decl. ¶

4.  An initial case management conference has not yet been scheduled, no defendant has

responded to the Complaint, no discovery has been conducted, and, indeed, nothing of

significance has happened in the lawsuit beyond Lodsys's simple filing of the Complaint. Sanders Decl. ¶ 5.  Because Lodsys's infringement allegations are based on Apple products and services that are indisputably licensed, Apple moves to intervene in this lawsuit to protect its interest in its License by asserting a defense and counterclaim that Lodsys's claims against the Developers are barred under the doctrines of exhaustion and first sale.

## ARGUMENT

### I.      Legal Standard

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of right, while Rule 24(b) governs permissive intervention.  Fed. R. Civ. P. 24.  Pursuant to Rule 24(a), a movant may intervene as a matter of right whenever four requirements are met: (1) the motion is timely; (2) the movant has an interest relating to the property or transaction that is the subject of the action; (3) the movant is situated such that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the movant's interests are inadequately represented by the existing parties to the suit.  Fed. R. Civ. P. 24(a)(2); *Reid v. GM Corp.*, 240 F.R.D. 257, 259 (E.D. Tex. 2006).  Although all four requirements must be met, the inquiry is a "flexible one" that "focuses on the particular facts and circumstances surrounding each application."  *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996); *see, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (encouraging courts to allow intervention "where no one would be hurt and the greater justice could be attained") (citations omitted).

Even where intervention as of right is not available, Rule 24(b) provides separately and independently for permissive intervention whenever an applicant "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B); *see, e.g.*, *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977) (explaining

permissive intervention).  Where the applicant's claim or defense is timely, shares a question of law or fact with the main action, and will not prejudice any party, courts freely grant permissive intervention.  *Id.* (noting "liberal construction" of Rule 24(b)).

Finally, in evaluating a motion to intervene, the court must accept as true any well-pleaded, non-conclusory allegations presented in the motion papers and proposed pleading. *Mendenhall v. M/V Toyota Maru No. 11 v. Panama Canal Co.*, 551 F.2d 55, 56 n.2 (5th Cir. 1977); *see, e.g.*, *State Farm Fire and Cas. Co. v. Black & Decker, Inc.*, Civ. A. 02-1154, 2003 WL 22966373, at *3 (E.D. La. Dec. 11, 2003) ("'The pleading is construed liberally in favor of the pleader and the court will accept as true the well pleaded allegations in the pleading.'") (quoting Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1914 at 418 (2d ed. 1986)).

## II.    Apple is Entitled to Intervene As a Matter of Right Under Rule 24(a)(2)

The first reason this motion should be granted is that Apple is entitled to intervene as of right.  As set out further below, Apple's motion is timely, Apple has a significant interest in its License and in the licensed products and services that are the subject of this action, Apple's interests in that property may be substantially diminished if it is not permitted to intervene, and the current defendants may not effectively represent Apple's interests in this case.

Indeed, under these exact circumstances, courts in this district have concluded that intervention as a matter of right is appropriate.  For example, in an action substantively indistinguishable from this one, *Negotiated Data Solutions, LLC v. Dell, Inc.*, No. 2:06-cv-528 (E.D. Tex. 2008), Intel filed a motion to intervene based on its license to the patents in suit.[3]  The patents in suit had been assigned to plaintiff NDS, which had later filed an infringement action against Intel customer Dell based on Intel components incorporated into Dell systems.  *Id.*  Intel

---

[3]    *See generally* Intel's Complaint in Intervention, *Negotiated Data Solutions, LLC v. Dell, Inc.*, No. 2:06-cv-528 (E.D. Tex. 2008) (attached as Exhibit C to the Sanders Decl.).

sought to intervene and assert claims for a declaratory judgment that, among other things, the plaintiff's allegations were barred by the doctrine of patent exhaustion, *id.* at \*6-\*9, arguing that, without declaratory relief, the plaintiff would "continue to wrongfully assert the Patents-in-Suit against Dell and threaten Intel and its customers, thereby causing Intel irreparable injury and damage." *Id.* at \*5-\*7.   The court found that Intel was entitled to intervene as a matter of right on "the issues of patent exhaustion and licensing." Order, *Negotiated Data Solutions, LLC v. Dell, Inc.*, No. 2:06-cv-528, at \*1 (E.D. Tex. Oct. 23, 2008) (Everingham, J.) (attached as Ex. D to the Sanders Decl.).   As in *Dell*, Apple can easily satisfy each of the four requirements for intervention as of right here.

### A.   Apple's Motion to Intervene is Timely

A motion to intervene is timely where the intervenor promptly moves upon learning of its interest in the litigation, where the current parties would not suffer prejudice from allowing the intervention, and where no other special or unusual circumstances render the motion untimely.  *See, e.g.*, *Edwards*, 78 F.3d at 1000; *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 422-23 (5th Cir. 2002).   Here, all requirements are readily satisfied.   Indeed, Apple moved while the case was still in its infancy:   the lawsuit was filed just over a week ago, the defendants have not yet answered Lodsys's Complaint (indeed, upon information and belief, they have not yet even been served with the summons and Complaint), and no other significant developments have taken place.  Apple's motion is indisputably timely.  *See, e.g.*, *Edwards*, 78 F.3d at 1000-01 (noting that the Fifth Circuit has found motions filed several months into the litigation timely as long as case is still in its early stages); *The Aransas Project v. Shaw*, 2010 WL 2522415, at \*3 (S.D. Tex. June 17, 2010) (same); *see also Sierra Club v. Glickman*, 82 F.3d 106, 109 n.1 (5th Cir. 1996) ("The timeliness requirement only bars intervention applications made too late.").

Similarly, Apple's motion will not result in prejudice to any existing party to this action.  Apple's proposed Answer in Intervention asserts a single defense and declaratory counterclaim, both based on the patent law doctrines of exhaustion and first sale.  Based on Lodsys's infringement allegations, these very same issues will likely be raised by every defendant.  Therefore, allowing Apple to intervene will not cause any delay in the schedule, add any new issues to the case, or otherwise affect the rights of the parties in any respect.  Finally, there are no special or unusual factors present that would render Apple's motion untimely or improper.  *See Edwards*, 78 F.3d at 1000.  Apple has thus satisfied this threshold requirement.

**B.      Apple Has a Significant Interest in the Property and Transactions That Are at Issue in this Lawsuit**

Apple has also met the second requirement for intervention as a matter of right under Rule 24(a): an interest in the subject matter of the litigation that is "direct, substantial, [and] legally protectable."  *Ozee v. Am. Council on Gift Annuities, Inc.*, 110 F.3d 1082, 1096 (5th Cir. 1997); *Espy*, 18 F.3d at 1207 ("[T]he 'interest test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.") (citations omitted).  As set out above, Apple holds a license to the patents in suit, the value of which depends on Apple's ability to offer its licensed products and services to the Developers in return for the Developers' agreement to pay Apple.  License rights such as these are "protectable under the law" and provide a sufficiently close relationship to the litigation to satisfy this requirement.  *See, e.g.*, *GE Co. v. Wilkins*, 2011 WL 533549, at *2 (E.D. Cal. Feb. 11, 2011) ("[Intervenor] has properly alleged that it has a license in the technology underlying the '985 Patent, and it is clear that such a license is protectable under the law.").

Second, Lodsys's infringement allegations target Apple's own products and services and their facilitation of communication between the end users, the Apps, the App Store,

and other Apple technology.  Courts have consistently held that a legally sufficient interest is implicated where infringement allegations rest on an intervenor's own products or services.  *See, e.g.*, *Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53, 55 (1935) (holding that manufacturer's intervention in infringement action against its customers is "necessary for the protection of its interest"); *Tegic Commc'ns Corp. v. Bd. Of Regents of the Univ. of Tex. Sys.*, 458 F.3d 1335, 1344 (Fed. Cir. 2006) ("[T]o the extent that [interest of the manufacturer] may be impaired by the Texas litigation, [manufacturer] may seek to intervene in that litigation."); *Honeywell Int'l v. Audiovox Commc'ns Corp.*, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (sufficient interest where intervenor made parts "at the heart" of infringement claims); *IBM Corp. v. Conner Periphs., Inc.*, 1994 WL 706208, at *5 (N.D. Cal. Dec. 13, 1994) (same).[4]

Finally, this litigation has fundamentally disrupted Apple's relationships with the Developers and with other developers, and places in jeopardy the revenue that Apple derives from those relationships.  The potential loss of revenue, developers, or goodwill provides yet another independent basis upon which to find that Apple has a legally sufficient interest in the property at issue.  *Cf., e.g.*, *U.S. Ethernet Innovations, LLC v. Acer, Inc. et al.*, No. 6:09-cv-448, at *4 (E.D. Tex. May 10, 2010) (Love, J.) (acknowledging significant interest in litigation based on, *inter alia*, potential loss of customers and goodwill, but ultimately granting permissive intervention without reaching question of intervention as of right) (Ex. E to the Sanders Decl.).

### C.  Apple's Ability to Protect its Interests Will Be Impaired if it is Not Permitted to Intervene Here

As set out above, Apple has demonstrated that its interests in the licensed technology at issue will be impaired if it is not allowed to intervene.  A finding that Lodsys is

---

[4]  While indemnification obligations are sometimes at issue in cases under Rule 24(a), the cases do not require or place any dispositive weight on any such obligation, as set out above.  And any such obligation is of course unnecessary for permissive intervention.

permitted to assert infringement claims against the Developers based on their use of licensed

Apple technology would effectively negate Apple's license rights, as well as harm Apple's

ability to preserve its substantial economic interest in its Developer relationships and sales of its

licensed products and services.  *See, e.g.*, *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 738

(1st Cir. 1977) (explaining that a "manufacturer must protect its customers . . . in order to avoid

the damaging impact of an adverse ruling against its products"); *Honeywell*, 2005 WL 2465898,

at *4 (holding that intervenor can "rightly claim . . . its interests will be impaired" where product

is "at the heart" of the case).  Moreover, an adverse outcome may harm Apple's ability to protect

its license rights in future litigation involving Lodsys and any number of other App developers,

providing an independent basis on which to find Apple has satisfied this prong.  *See, e.g.*,

*Heaton*, 297 F.3d at 424 (holding that potential negative *stare decisis* effect is also sufficient).

> ## D.   The Developers May Not Adequately Represent Apple's Interest in Demonstrating That Lodsys's Infringement Claims Are Exhausted

Finally, it is hornbook law that Apple's burden in demonstrating that the existing

defendants will not adequately represent its interests is "minimal," and requires no more than a

showing that the representation by those parties "may be" insufficient.  *Trbovich v. United Mine

Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *accord, e.g.*, *John Doe No. 1 v. Glickman*,

256 F.3d 371, 380 (5th Cir. 2001) ("The potential intervener need only show that the

representation *may be* inadequate.") (emphasis in original) (citations omitted).

Apple has met this requirement for several separate and independent reasons.

First, the Developers lack the resources to fully and fairly litigate the issue of whether Lodsys's

claims are exhausted.  The Developers are largely individuals, *see, e.g.*, Docket No. 1 ¶¶ 5, 7

(identifying two of seven defendants as individuals), or small entities with limited resources.

*See, e.g.*, http://www.manta.com/c/mmj0mt2/the-iconfactory-inc (defendant Iconfactory has

about six employees); http://www.manta.com/c/mmlhs8p/combay-inc (approximately two employees for defendant Combay).  Apple's far superior resources alone constitute a ground on which to find its interests may not be adequately represented.  *See, e.g.*, *Bush v. Viterna*, 740 F.2d 350, 357 (5th Cir. 1984) (this prong is met when "it is clear that the applicant will make a more vigorous presentation of arguments than existing parties"); *Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991) ("Given the financial constraints on the insureds' ability to defend the present action, there is a significant chance that they might be less vigorous than the Teague Intervenors in defending their claim to be insureds under the ERC policy.").

Moreover, even if the financial disparity between the parties were not in and of itself sufficient to meet this prong, the interests of Apple and the Developers in this litigation may ultimately diverge.  While the Developers will likely be interested in resolving this case as quickly and inexpensively as possible, Apple's interest is in protecting its broader license rights with respect to thousands of App developers for Apple products who may be the subject of future Lodsys lawsuits or threats.  This constitutes an independent basis upon which to find that Apple's interests may not be adequately represented absent intervention.  *See, e.g.*, *Doe*, 256 F.3d at 380-81 (noting that disparity of incentives between party with "broad" interest in resolving issue and more narrow interest of intervening entity supported granting motion to intervene); *Heaton*, 297 F.3d at 425 ("That the FDIC's interests and Monogram's may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the FDIC's burden on this issue.") (intervention appropriate where existing party possessed broad public interest and party seeking to intervene possessed narrower economic interest).

Finally, the Developers may lack sufficient information and expertise regarding Apple's license rights and the nature and operation of Apple's licensed technology to adequately

represent Apple's interests.  Apple's superior information constitutes a third separate reason to

find that the Developers' defense may not be adequate to protect Apple's license rights.

*Honeywell*, 2005 WL 2465898, at *4 ("[B]ecause [intervenor] is uniquely situated to understand

and defend its own product, its interests are not adequately represented by existing parties to the

litigation."); *LG Elecs. Inc. v. Q-Lity Comp. Inc.*, 211 F.R.D. 360, 365-66 (N.D. Cal. 2002).

**III.      In The Alternative, Permissive Intervention is Appropriate Here Under Rule 24(b)**

Even if Apple did not meet the standard for intervention as of right, however, this

motion should still be granted because Apple's proposed defense and counterclaim present

numerous questions of fact and law that are common to the existing lawsuit.  First, based on the

infringement allegations Lodsys has made to date, it is clear that both Apple and the existing

defendants will raise issues of patent exhaustion and first sale, requiring the Court to analyze

Apple's rights under its license, the licensed technology that Lodsys has accused of

infringement, and the application of the exhaustion and first sale doctrines to Lodsys's claims.

Second, additional common questions of fact exist with respect to the licensed

Apple products and methods that Lodsys appears to be accusing of infringement.  Precisely how

the Developers use Apple's SDKs, APIs, memory, software, hardware, and servers, as well as

the App Store itself—and precisely how those Apple products and services work—will be

factual questions with respect to both Apple's exhaustion defense and counterclaim and Lodsys's

existing infringement claims against the Developers.  Finally, the Court will effectively be

required to engage in the same claim construction and infringement analysis with respect to both

Lodsys's existing claims and Apple's exhaustion defense, including the same analysis of the

relevant claim terms, specifications, prosecution histories, and Lodsys infringement allegations.

Under these circumstances, courts uniformly find that permissive intervention is appropriate.  For example, in *Reid*, 240 F.R.D. at 260 (Folsom, J.), the court granted permissive intervention to Microsoft where, as here, Microsoft's software was claimed to be a substantial part of the allegedly infringing system.  In doing so, the court noted that "Microsoft's claims and defenses share common questions of law and fact with the action by Plaintiffs against Defendants . . . .  Microsoft's claims of invalidity and unenforceability raise the same questions of law and fact as similar claims by Defendants because they are all asserted against the '120 patent."  *Id.*; *accord, e.g.*, *TiVo Inc. v. AT&T Inc.*, No. 2-09-cv-259 (E.D. Tex. March 31, 2010) (Folsom, J.) (permissive intervention where infringement claims rested on software provided by Microsoft) (Ex. F to Sanders Decl.); *Acer*, No. 6:09-cv-448 (Love, J.) (permissive intervention where patents were asserted against Intel technology incorporated in customer devices).

As in each of these cases, Apple's proposed pleading relates to the same patents, claims, products, and defenses that will be litigated here regardless of whether Apple is allowed to intervene.  Similarly, as set out above, this motion is timely and will result in no prejudice to the existing parties.  Permissive intervention is thus appropriate.

## **<u>CONCLUSION</u>**

For each of the foregoing reasons, Apple respectfully requests that the Court grant Apple's motion and permit the filing of Apple's proposed Answer and Counterclaim.

Dated: June 9, 2011                    Respectfully submitted,


                                       By  _/s/ Eric H. Findlay_____
                                       Eric H. Findlay
                                       State Bar No. 00789886
                                       FINDLAY CRAFT, LLP
                                       6760 Old Jacksonville Hwy
                                       Suite 101
                                       Tyler, TX 75703
                                       903/534-1100
                                       903/534-1137 Facsimile
                                       efindlay@findlaycraft.com

                                       George M. Newcombe (*pro hac pending*)
                                       Jonathan C. Sanders (*pro hac pending*)
                                       SIMPSON THACHER & BARTLETT, LLP
                                       2550 Hanover Street
                                       Palo Alto, CA 94304
                                       Tel: (650) 251-5000
                                       Fax: (650) 251-5002
                                       gnewcombe@stblaw.com
                                       jsanders@stblaw.com

                                       **Counsel for Intervenor Defendant and
                                       Counterclaim Plaintiff Apple Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 9th of June, 2011.

/s/ Eric H. Findlay
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

This is to certify that, on June 9, 2011, Jonathan C. Sanders, counsel for Apple Inc., and Michael Goldfarb, counsel for Plaintiff, conducted the personal conference required by Civil Rule 7(h), and that, as of the filing of this document, Plaintiff has not agreed to this Motion to Intervene.

/s/ Eric H. Findlay
Eric H. Findlay